THE PEOPLE, RESPONDENT, v. GUZMÁN, APPELLANT.

APPEAL from the District Court of Mayagüez.

No. 497.—Decided February 4, 1913.

CRIMINAL LAW—DISTURBING THE PEACE—DRAWING DEADLY WEAPON.—In order that the drawing or exhibiting of a deadly weapon may constitute a crime under section 370 of the Penal Code, it is necessary that it be done in a rude, angry and threatening manner in the presence of two or more persons. These elements are not present in the case at bar.

The facts are stated in the opinion.
*Mr. Charles E. Foote, fiscal,* for The People.

*Mr. Santiago Vivaldi Pacheco* for appellant.

MR. JUSTICE DEL TORO delivered the opinion of the court.

The complaint in this case was filed in the Municipal Court of Añasco, the pertinent parts of which are as follows:

"That on the morning of August 19, 1912, in the Latin-American Club of Añasco, of the judicial municipal district of Añasco, P. R., the said accused, in the presence of five persons there assembled, drew a deadly weapon in a violent, angry and threatening manner when there was no need for it in his own defense." \

The accused was found guilty in the municipal court and appealed to the District Court of Mayagüez. The case being tried there *de novo* according to law, he was again found guilty of the act charged, which is made an offense by section 370 of the Penal Code, whereupon he appealed to this court.

The appellant did not appear at the hearing of his appeal, but filed through his counsel a brief alleging that the charge made against him in the complaint was not supported by the evidence. The *fiscal,* both orally and in his statement of the case, opposed the reversal of the judgment appealed from.

The record contains a statement of the case duly certified to by the trial judge, in which is included all the evidence admitted during the trial in the district court consisting of the testimony of several witnesses. The most important and complete declaration made by the witnesses was the following:

"My name is Manuel Antonio Guzmán. I am a farmer, a property owner and resident of Añasco, in which town I was on August 19 in the Latin-American Club where there was a ball in progress. I know José N. Guzmán, whom I saw that night at the ball. On the night mentioned in the complaint I formed part of the entertainment committee at the Latin-American Club. Between ten and eleven o'clock the president of the club, on leaving, left me in charge to preserve order. Between one and two o'clock in the morning I was in the billiard room and José N. Guzmán entered carrying a revolver. I approached him and asked him politely to give me the revolver. He refused and I endeavored to take it away from him, struggling

with him for that purpose. He entered carrying the revolver in his hand. He did not have the revolver in his hand when ascending the stairway but when he entered the billiard room. He came into the billiard room from the other room, the bar. I saw him with the revolver in his hand as he entered the door which connects the rooms, but he was acting quietly. He came in and I approached him and asked him to give me the revolver. He was carrying the revolver in his hand in this way. When he entered he and I were the only persons in the room. The revolver was like the one being shown me, with a black stock, but I cannot say that this is the same one. The defendant was acting quietly. He was not quarreling with anybody nor with me. He had no trouble there and afterward when I asked him two or three times to give me the revolver and insisted on taking it away from him he said he would not give it to me. I was responsible for the order in the club and had authority to prohibit the carrying of arms. I asked him to give the weapon to me, but seeing that he would not do so I tried to take it from him. I grabbed the revolver, seizing his wrist and the revolver, but could not take it from him. He was holding the revolver with one hand, but during the struggle it was held by his two hands and both of mine. There was no one else there at that time, but later people began to come in, Urrutia, Dueño and others. I have never had any trouble with the accused.''

To questions put to him by the judge he replied:

''I cannot state how long we struggled, ten or fifteen minutes, perhaps, before the people began to come in. The accused resisted to prevent me from taking the revolver from him. He became angry and was violent while struggling to keep the revolver. The accused said that he would not give me the revolver and asked who was I that he should give it to me. He said this in anger, and while he was in this mood I insisted on taking the revolver. While we were engaged in this struggle Carlos Urrutia, Doctor Dueño and others entered, among them the marshal who took the revolver. When all these persons arrived he still had the revolver in his hand and the marshal took it from him.''

The testimony of the other witnesses did not contradict that of Manuel Antonio Guzmán, but on the contrary corroborated it in many points. The defendant did not offer any evidence and the only question calling for our decision

is whether or not the facts disclosed by the evidence constitute the offense mentioned in section 370 of the Penal Code, which says:

"Every person who, not in necessary self-defense, in the presence of two or more persons, draws or exhibits any deadly weapon in a rude, angry, and threatening manner, or who, in any manner unlawfully uses the same, in any fight or quarrel, is guilty of a misdemeanor."

Said section is found in Title XV of the code, relating to crimes against the public peace. The ground upon which the act therein mentioned is punished, independently of that of carrying the weapon or of committing an assault therewith, is that of disturbing the public peace caused by the offender's drawing or exhibiting a deadly weapon in a rude, angry, and threatening manner, or by using the same in a fight or quarrel without any necessity therefor.

Do all the essential elements of the offense prosecuted and for which the accused has been punished exist in this particular case in either of its two aspects?

Such elements are:

*First:*

(*a*) To draw or exhibit a deadly weapon;

(*b*) In the presence of two or more persons;

(*c*) In a rude, angry, and threatening manner;

(*d*) Not in necessary self-defense.

*Second:*

Unlawfully using the deadly weapon in any fight or quarrel.

In our judgment the evidence introduced does not show the existence of all the elements constituting the offense in any of its aspects.

Analyzing the testimony of the witness, Guzmán, which as we have already stated is the most complete of any introduced, we cannot conclude that the defendant *drew or exhib-*

*ited the deadly weapon in a rude, angry, or threatening manner,* in the presence of two or more persons.

When the accused entered the billiard room with the weapon in his hand he was conducting himself peacefully, and witness Guzmán was the only person present.

Had the defendant entered the club in a violent or angry manner with the weapon in his hand threatening to fire it, thus disturbing the peace of the persons present, then it might be concluded that he committed the offense with which he was charged and for which he was punished.

But no such fact appears from the evidence and the persistency of the accused in refusing to relinquish his weapon voluntarily, retaining its possession in the presence of several persons, cannot be considered, as the *fiscal* contends, as an act equivalent to exhibiting a deadly weapon in a rude, angry, and threatening manner, in the presence of two or more persons.

Perhaps it may be deduced from the testimony that the defendant became enraged when refusing to give up the weapon, but there is not the slightest hint in any of the testimony that he acted threateningly, which is a necessary element for the complete perpetration of the offense. The law requires that the offender act in a rude, angry, and threatening manner, and the defendant in this case simply refused to deliver the weapon without threatening anybody with it.

It may be that the acts of the defendant constituted an offense, but it was not the offense provided against and punishable by section 370 of the Penal Code according to the evidence. And this being the fact, the conclusion must follow necessarily that the appeal should be sustained and the judgment appealed from reversed, the defendant being acquitted of the charge made against him.

*Reversed.*

Chief Justice Hernández and Justices MacLeary, Wolf and Aldrey concurred.